IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

Michael W. Curtis )
    Plaintiff, )
          ) Case No. 3:08cv-528-H
v. )
          ) JURY DEMAND
Humana, Inc. )
    Defendant. )

## COMPLAINT AND JURY DEMAND

Now comes Plaintiff, by and through his counsel, and for Complaint against the Defendant, states as follows:

### I. PARTIES AND JURISDICTION

1. At all times relevant hereto, Plaintiff, Michael W. Curtis, has resided at 4403 Fegenbush Lane, Louisville, KY.. His date of birth is July 23, 1960, and at all times relevant hereto Plaintiff was over forty (40) years of age.

2. At all times relevant hereto, Defendant Corporation, a corporation licensed and doing business in the Commonwealth of Kentucky, is and at all times mentioned herein was an employer within the meaning of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101 – 12213.

3. This Court has jurisdiction over this matter as this matter involves a federal question based upon the Americans With Disabilities Act of 1990.

4. The Westen District of Kentucky is the proper venue for this action pursuant to 28 U.S.C. §1391 (b)(1) and (b)(2) because this is the District and

Division in which the Plaintiff resides and in which a substantial part of the events or omissions giving rise to the claims occurred.

## II. STATEMENT OF FACTS RELEVANT TO ALL CLAIMS

5. Plaintiff, Michael W. Curtis, is a qualified individual with a disability within the meaning of the Americans with Disabilities Act of 1990 "ADA."

6. On or about June 25, 2007, Defendant hired Plaintiff as an employee in the position of Customer Service Specialist.

7. Prior to his employment with the Defendant, Plaintiff underwent major back surgery that left him with paralysis from nerve damage of both lower extremeties from the waist down that impairs his ability to walk, climb steps, and negotiate inclines because he lost substantial useage of the large muscles of his legs and buttocks.

8. At the time of his employment interview, Plaintiff told Defendant's hiring supervisor that he had major paralysis of this lower extremities that impaired his ability to walk.

9. Humana contracted with parking garages for parking spaces for its employees and pays a portion of each employee's monthly parking.

10. At the time of Plaintiff's employment, Defendant had an Associate Work-Life Policies & Processes document that was on-line that outlined a flow chart for Associates (Humana employees) regarding Humana's policies regarding the ADA. A copy of the Associate Work-Life Policies & Processes document is attached hereto as Exhibit "A" and incorporated herein in its entirety.

11. Defendant never advised Plaintiff that it had a specific policy manual regarding the ADA, although its employee handbook was on-line.

12. At the end of first day of his employment with the Defendant, Plaintiff first learned that his assigned parking was four blocks from the building where he was to work and that the walk required the Plaintiff to walk up a significant incline and over broken sidewalks.

13. After learning of his assigned parking space, Plaintiff went to Defendant's trainers, supervisor, and parking facilator on numerous occasions and asked for better and closer parking provisions to "reasonable accommodate" his walking impairment because the assigned parking jeopardized his health and safety.

14. Defendant's employees refused to enter into any interactive process as required by the ADA and by Defendant's own procedures outlined in its own document titled Humana Associate-Work-Life and Policies & Processes to determine an appropriate parking accommodation and refused to provide Plaintiff with better parking accommodations when better accommodations were readily available.

15. In November 2007, Plaintiff spoke with Defendant's Head of Disability Management and told him of his paralysis and impaired ability to walk and climb steps and inclines, especially during time of incliment weather.

16. Defendant's Head of Disability Management refused to enter into an interactive process with Plaintiff as required by the ADA and by Defendant's own procedures outlined in Humana Associate-Work-Life and Policies & Processes to

determine an appropriate accommodation and refused to provide Plaintiff with better parking accommodations when better accommodations were readily available.

17. On April 17, 2008, Plaintiff fell while walking from the assigned parking lot to his place of employment and after the fall Plaintiff's foot started to swell and turn black.

18. Immediately after the fall and on numerous occasions, about two to three times a week until his discharge, Plaintiff informed Defendant's supervisor of the fall, his need to seek medical care, and his need to have parking accomodations closer to the building.

19. After scheduling of a doctor's appointment on April 30, 2008, Plaintiff called his supervisor and left a phone message of a scheduled doctor's appointment for May 1, 2008.

20. Due to the doctor's appointment of May 1, 2008, Plaintiff missed the day of work, and upon returning to work, Plaintiff tried to put into the computer, as required by the Defendant, the fact that he had a follow-up doctor's appointment for May 6, 2008, but the computer refused to accept the entry saying: "No available time." Plaintiff left phone messages for his supervisor and for the HR Department that he had a doctor's appointment for May 6, 2008.

21. On May 6, 2008, Plaintiff returned to work after his doctor's appointment, missing less than three hours of work, and on May 7, 2008, Plaintiff received a

warning from his supervisor about his attendance and that he would be terminated if he missed a day or was tardy prior to August 4, 2008.

22. During this May 7, 2008, meeting Plaintiff informed his supervisor that he had uncoming doctor appointment for May 13, 2008, and Plaintiff's supervisor told Plaintiff that she would override the computer system so that he would not be penalized for seeking medical treatment.

23. On Tuesday, May 13, 2008, after Plaintiff went to his follow-up doctor appointment he went to work and completed working his normal hours, but on Thursday, May 15, 2008, Plaintiff's legs were exhausted and cramping to such an extent that he was unable to go to work on Friday, May 16, 2008.

24. On early Friday morning, May 16, 2008, Plaintiff called his supervisor and Humana's absent party "hot line" and said that he was sick and not able to make it to work because of his injury and resulting stress.

25. On Monday, May 19, 2008, Plaintiff arrived at work at his normal time and worked about two hours when he was informed by his supervisor that he was fired and that he should immediately leave the premises. A security guard was called and Plaintiff was escorted from the building.

26. Plaintiff was forty-seven (47) years of age at the time of his termination.

## COUNT I
## DISABILITY DISCRIMINATION

27. The allegations contained in paragraphs 1 through 26 inclusive are hereby incorporated by reference.

28. From the time of his employment date to the day of his termination, Plaintiff was capable of performing the duties of his position as a Customer Service Specialist at Defendant's facility located 321 West Main Street, Louisville, Kentucky.

29. From the time of his employment to the day of his termination, Plaintiff told repeatedly his supervisor, the head of disability management, his trainers of his disability in walking, especially his difficulties in negotiating steps, inclines, and uneven surfaces because of his instability and inability to feel in in his lower extremities.

30. After first learning that his assigned parking was four blocks away from the building where Plaintiff was working and the the walk to the building required Plaintiff to navigate long stretches of uneven and uphill terrain, Plaintiff asked for parking assigned closer to the building.

31. After his fall and injury, Plaintiff repeatedly told his supervisor that that his assigned parking four blocks away from the building which required him to navigate long stretches of uneven and uphill terrain was dangerous and could result in cause more significant issues and damage to his lower extremities.

32. During such times as referred to above, Defendant, through its employees, continually, intentionally, and in a discriminatory manner refused:

>   to provide Plaintiff with better parking accomodations;

>   to follow the procedures outlined by the Defendant in its own handbook titled Hamana Associate-Work-Life and Policies & Processes;

to enter into the interactive process to determine reasonable accomodations in view of Plaintiff's disability;

to provide accomodations in good faith, after learning of Plaintiff's injuries, for Plaintiff to seek and receive medical treatment;

to make reasonable modifications or adjustments to enable Plaintiff to continue his employment;

to make a good faith effort to assist the Plaintiff in making accommodations that the Defendant could have made by acting in good faith ; and

to make reasonable modifications in Plaintiff's work schedule to allow Plaintiff to seek medical treatment for an injury that arose out of Defendant's refusal to provide or make reasonable modifications in its arrangements of employees' parking.

33. Defendant's May 19, 2008, termination of Plaintiff was not based on any attendance guideline justification but was discriminatory as to Plaintiff in that Defendant terminated Plaintiff because of his disability.

34. The adverse employment actions by Defendant were in violation of the Americans Disability Act.

35. Based upon information and belief that following Defendants' termination of Plaintiff, Plaintiff's position was replaced by a non-disabled individual.

36. As a result of Defendant's actions, Plaintiff has suffered irreparable injuries, including but not limited to loss of pay, benefits and other economic

losses, emotional pain and suffering, mental anguish, humiliation, embarrassment, personal indignity and other intangible injuries for all of which he should be compensated.

## COUNT II
### MENTAL AND EMOTIONAL DISTRESS

37. The allegations contained in paragraphs 1 through 26 and Count I, paragraphs 28 through 36, inclusive, are hereby incorporated by reference.

38. Defendants' actions described herein were intentional and inflicted upon Plaintiff severe mental and emotional distress.

39. As a result of Defendants' actions, Plaintiff has suffered irreparable injuries, including but not limited to loss of pay, benefits and other economic losses, emotional pain and suffering, mental anguish, humiliation, embarrassment, personal indignity and other intangible injuries for all of which he should be compensated.

## COUNT III
### BREACH OF CONTRACT

40. The allegations contained in paragraphs 1 through 26, Count I, paragraphs 28 through 36, and Count II, paragraphs 38 and 39, inclusive, are hereby incorporated by reference.

41. Plaintiff's position was held under both express and implied promises of job security and in accordance with Humana's own policies and procedures, all of which constituted a contract of employment.

41. Defendants' actions in removing Plaintiff from his position and their failure to reinstate him constitute a willful breach of his contract with the Defendants.

42. As a result of Defendants' actions, Plaintiff has suffered irreparable injuries, including but not limited to loss of pay, benefits and other economic losses, emotional pain and suffering, mental anguish, humiliation, embarrassment, personal indignity and other intangible injuries for all of which he should be compensated.

**WHEREFORE**, Plaintiff respectfully asks to this Court as follows:

A.  For all compensatory and punitive damages with respect to the statutory, tort and contract claims in an amount being just;

B.  For reasonable costs, including attorney's fees; and

C.  For all other equitable and legal relief to which Plaintiff appears entitled.

*[signature]*
George R. Carter
710 Barret Avenue
Louisville, Kentucky 40204
(502)419-7157
Counsel for Plaintiff

## VERIFICATION

I hereby certify that I have read the above Complaint and that the information contained therein is true and correct to the best of my knowledge and belief.

_____
Michael Curtis

Subscribed, acknowledged and sworn to before me by Michael Curtis this 3rd day of October 2008.

My Commission Expires: 11-30-2010.

_____
NOTARY PUBLIC, STATE AT LARGE, KY