UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:08-CV-528-H

MICHAEL W. CURTIS                                                                 PLAINTIFF

V.

HUMANA MILITARY HEALTHCARE                             DEFENDANT
SERVICES, INC.

**MEMORANDUM OPINION**

Plaintiff, Michael Curtis, brings this action against his former employer, Defendant Humana Military Healthcare Services, Inc., alleging disability discrimination in violation of the Americans with Disabilities Act of 1990 ("ADA"). Plaintiff makes two distinct claims: (1) that Defendant discriminated against him by refusing to provide a reasonable accommodation necessitated by his disability; and (2) that Defendant terminated him because of his disability.[1] Discovery is now complete and Defendant moves for summary judgment on all claims.

**I.**

The facts are complicated but relatively undisputed.

In December of 2003, approximately three and a half years before he began his employment with Defendant, Plaintiff underwent back surgery to alleviate a herniated disc. Unfortunately, complications arose from the surgery. Plaintiff was completely paralyzed in his legs for six to seven months. Slowly, however, Plaintiff regained the use of his legs. At the times relevant to this case, Plaintiff was able to walk and was actually encouraged to walk as much as possible by his physicians. Still, Plaintiff had some difficulty walking and standing still

---

[1] Plaintiff's Complaint also states causes of action for breach of contract and intentional infliction of emotional distress. However, Plaintiff now concedes that those claims are not viable. Thus, the Court will dismiss them.

for any length of time. He frequently used a cane or leaned against walls or large sedentary objects for support and balance. During his tenure with Humana, Plaintiff "tried as much as [he] could to walk without a cane," but probably used a cane "70, 75 percent of the time." (Plaintiff Dep. 151:18 - 152:6, June 10, 2009.)

As his recovery improved, Plaintiff sought work. In 2006, he accepted a position with a company called HCA doing work, primarily, on the telephone. He worked there for several months until applying for and receiving a position with Defendant in June of 2007. Plaintiff's position primarily required answering the telephone while seated at a desk. Plaintiff agrees that he needed no special accommodations while actually at work and that his physical impairment did not impact the performance of his job duties.

As an added benefit for its employees, Defendant subsidizes the cost of parking. As a part of this program, Defendant assigns each employee a parking space based solely on seniority. In other words, the best, or closest, parking spaces go to the employees who have been with Humana the longest. As a new employee, Plaintiff's subsidized parking space was approximately four blocks from the door to his work building. Early on in his tenure, Plaintiff requested a closer parking space because of his difficulty walking. He did not present any medical evidence that he was unable to walk from his parking place or any medical restriction on his ability to walk, but did present a physician's note saying he needed a closer space.

Defendant informed Plaintiff that it issued parking spaces on a seniority only basis and that it would not make an exception to that policy. However, Defendant offered two alternatives: (1) Plaintiff could arrange his own parking closer to the building; or (2) Plaintiff could use public transportation that was free of charge to all Humana employees who simply

2

showed their Humana ID.  Plaintiff alleges that he attempted to secure a closer space on his own but was unable.  He never attempted to ride the bus, but states that he believed it would be too difficult.  Plaintiff requested a closer parking space on at least two other occasions and received the same response.

During his time with Defendant, Plaintiff agrees that he missed a significant amount of work.  The following is a list of Plaintiff's absences and his stated reason for each absence:

| **Date of Absence** | **Reason** |
| --- | --- |
| July 16, 2007 | Sick with the flu |
| October 4, 2007 | Stayed home with sick child |
| November 19, 2007 | Stayed home with sick child |
| December 12, 2007 | Stayed home with sick child |
| January 4, 2008 | Stayed home with sick child |
| January 7, 2008 (2.7 hours late) | Snow delay at children's school |
| January 22, 2008 (2 hours late) | Snow delay at children's school |
| March 4, 2008 (left 5 hours early) | Sick with pink-eye |
| March 5, 2008 | Sick with pink-eye |
| March 7, 2008 | Snow conditions prevented coming to work |
| May 1, 2008 | Doctor's appointment to treat foot injury, then went home |
| May 6, 2008 (2.8 hours late) | Doctor's appointment |
| May 16, 2008 | Stress, fatigue, leg cramps |

Defendant found this level of absenteeism unacceptable and frequently informed Plaintiff of the importance of attendance and punctuality.  After the January 7, 2008 tardiness, Defendant counseled Plaintiff about absenteeism and he was told not to incur any additional attendance incidents before April 6, 2008.  Unfortunately, several more absences occurred.  On May 7, 2008, Plaintiff was given an "attendance warning," was told not to have any additional attendance issues before August 14, 2008, and was warned that a failure to meet this expectation could result in his termination.  Plaintiff agrees that he was given this warning and understood it.

Plaintiff agrees that most of his absences were clearly unrelated to his physical

3

impairment or the location of his parking space. On April 17, 2008, however, Plaintiff fell down while walking from his vehicle to his office and injured his foot. Plaintiff stepped down from a curb as another vehicle quickly approached. Fearing the vehicle would not stop as it should, Plaintiff attempted to maneuver backward, tripped and fell. Plaintiff was, however, able to attend work that day and did not miss any work related to the foot injury until May 1, 2008.

On May 19, 2008, Defendant terminated Plaintiff, citing his absenteeism as the basis for its decision. Plaintiff now challenges that termination and Defendant's refusal to subsidize a closer parking space.

## II.

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(c). "The moving party has the 'initial responsibility of informing the district court of the basis for its motion, and identifying those portions' of the record showing an absence of a genuine issue of fact." *Mt. Lebanon Personal Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Once that initial showing has been made, "the non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting Fed. R. Civ. P. 56(e)). "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324.

## III.

Plaintiff's first claim is for disability discrimination based on Defendant's refusal to provide him a closer parking space. In common legal terms, Plaintiff's claim is for denial of a reasonable accommodation necessary for Plaintiff to perform his job. In order to succeed on such a claim, Plaintiff

> must show that: (1) he is an individual with a disability within the meaning of the [ADA]; (2) he is otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; (3) his employer was aware of his disability; and (4) the employer failed to provide a reasonable and necessary accommodation for his disability.

*Ford v. Frame*, 3 Fed. Appx. 316, 318 (6th Cir. 2001) (citing *Smith v. Ameritech*, 129 F.3d 857, 866 (6th Cir. 1997); *Gaines v. Runyon*, 107 F.3d 1171, 1175 (6th Cir. 1997)). For the following reasons, the Court finds that Plaintiff has presented insufficient evidence to reach a jury on this claim.

**A.**

To show that he is disabled, Plaintiff must present evidence that he suffers from a physical or mental impairment that substantially limits a major life activity. *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 194-95 (2002).[2] It is undisputed that Plaintiff suffers from a physical impairment. Plaintiff claims that impairment substantially affects the major life activity of walking. Without doubt, walking qualifies as a major life activity. *See id.* at 197. The question, then, is whether Plaintiff's physical impairment "substantially limits" his ability to walk.

To show a substantial limitation, Plaintiff must present evidence that his physical

---

[2] *Williams* was effectively overruled by the ADA Amendments Act of 2008 ("ADAAA"). However, Plaintiff's claims arose prior to the effective date of the ADAAA. Because the amended act is not retroactive, the standards existing in 2008 (i.e. the standards annunciated in *Williams*) are applicable to this case. *See Milholland v. Sumner County Bd. Of Educ.*, 569 F.3d 562, 565 (6th Cir. 2009).

impairment "prevents or severely restricts" his ability to walk. *Id.* at 198. It is undisputed that Plaintiff was able to walk during his tenure with Humana. Thus, his physical impairment did not "prevent" his ability to walk. To be sure, Plaintiff's ability to walk was limited in some ways. For example, Plaintiff frequently used a cane to aid his walking; he had less ability to walk long distances than other persons. However, none of this prevented Plaintiff from performing everyday life activities. He was able to walk to work from his parking space four blocks away from his office every day. Plaintiff fell only once, and on that one occasion, his fall was primarily a result of his attempt to avoid being struck by a vehicle. Aside from his last absence, Plaintiff does not assert that he ever missed work because of an inability to walk to work from his parking space. Finally, Plaintiff presents no medical opinion supporting a disability under the ADA. Indeed, the most recent medical note suggests that Plaintiff could "ambulate" with a cane.

     Previous decisions from this district and the Sixth Circuit convince the Court that these circumstances fall well short of showing a disability as defined under the ADA. In *Hayes v. Potter*, No. 3:06-CV-251-S, 2008 WL 2858916 (W.D. Ky. July 24, 2008), the Court considered a plaintiff's claim that he was denied a reasonable accommodation when his employer refused to provide him a closer parking space, which the plaintiff alleged was necessitated by his difficulty walking. The Plaintiff's condition "require[d] him to walk with a cane, wear a leg brace, and prevente[d] him from walking more than one city block without stopping and resting." *Id.* at *3. The Court found that this condition did not "severely restrict" the plaintiff's ability to walk. Likewise, in *Dalton v. Potter*, No. 3:05-CV-95-H, 2007 WL 4414781 (W.D. Ky. Dec. 14, 2007), the plaintiff "suffer[ed] from a rather severe military service connected left ankle injury," which

6

had required two surgeries. *Id.* at *1. "[H]is injury cause[d] him to walk with a limp and to have difficulty walking generally. He [could] walk only about three to four hundred yards before needing to stop and he [could not] play sports. He [took] prescription and inflammatory and pain medications." *Id.* The Court found that the plaintiff in *Dalton* was also not disabled under the ADA. Plaintiff in our cases presents no evidence to distinguish his impairment from those presented in *Dalton* and *Hayes*.

The analysis presented in *Dalton* and *Hayes* appears to follow closely with the analysis approved by the Sixth Circuit. The Circuit has stated that "moderate difficulty or pain experienced while walking does not rise to the level of a disability." *Penny v. United Parcel Service*, 128 F.3d 408, 415 (6th Cir. 1997). In *Penny*, the Circuit cited *Stone v. Entergy Services, Inc.*, No. 94-2669, 1995 WL 368473 (E.D. La. June 20, 1995), approvingly for finding that a plaintiff was not disabled "despite having muscle weakness, residual partial paralysis from polio, one leg longer than the other, and an approximate total body impairment of 15%." *Penny*, 128 F.3d at 415.

Other circuits have considered cases more on point. In *Wood v. Crown Redi-Mix, Inc.*, 339 F.3d 682 (8th Cir. 2003), the court considered the disability status of a plaintiff who had numbness in his toes and left leg, whose left knee "collapses," who "can only walk approximately one-quarter of one mile before he must stop and take a rest," and who walked with a cane "on occasion." *Id.* at 685. The Eighth Circuit determined that the plaintiff's "ability to walk is limited, but . . . the evidence does not demonstrate a severe walking restriction." *Id.* Plaintiff here has similar limitations. He claims numbness in his feet, difficulty walking, and fatigue from walking. However, Plaintiff asserts neither that his legs frequently "give out" as

7

did the *Wood* plaintiff nor that he must rest as often as the *Wood* plaintiff. Following the analysis of *Wood,* this Court finds that, as a matter of law, Plaintiff has presented insufficient evidence to show that his physical impairment "severely restricted" his ability to walk. Therefore, Plaintiff is not disabled under the ADA.

**B.**

Because the Court has determined that Plaintiff has presented insufficient evidence of a disability, his claim cannot proceed. However, even if one assumed Plaintiff is disabled under the ADA, Plaintiff's claim fails because Defendant offered Plaintiff a reasonable accommodation, which Plaintiff refused to accept.[3]

> Under the ADA regulations, the employer has the ultimate discretion to choose between effective accommodations. It is well-settled that 'an employee cannot make his employer provide a specific accommodation if another reasonable accommodation is instead provided. The regulations also provide that if an employee rejects the offered reasonable accommodation that is necessary to enable the individual to perform the essential functions of the position . . . the individual will not be considered a qualified individual with a disability.

*Keever v. City of Middletown*, 145 F.3d 809, 812 (6th Cir. 1998) (quotations and citations omitted).

Although Defendant denied Plaintiff's request for a parking space closer to his office, Defendant did offer him an alternative: Plaintiff could ride public transportation that would drop

---

[3] Defendant argues that Plaintiff's claim should also fail because he was not "otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation." *Ford*, 3 Fed. Appx. at 318. It is undisputed that Plaintiff's medical impairment did not affect his ability to perform his job, which required him to sit at a desk and answer the telephone. Rather, Defendant argues that Plaintiff's attendance problems make him "unqualified." To be certain, where a Plaintiff *cannot* attend work, he is not qualified for any position. Coming to work is a fundamental requirement of almost any job. *See Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1047 (6th Cir. 1998) (finding that Plaintiff was not qualified for her position because she was not released for work by her doctor and she was physically incapable of coming to work). However, Plaintiff here was not physically incapable of coming to work. Indeed, most of his absences were unrelated to his own medical condition. While his absences may certainly justify his termination as discussed below, they did not render him "unqualified" for his position.

8

him off at the front door free of charge by simply showing his Humana ID. On its face, this certainly appears to be a reasonable accommodation for Plaintiff's alleged disability. Plaintiff requested an accommodation in order to shorten his walking distance to get in the office. If the bus would drop Plaintiff off directly in front of the building, it would actually make Plaintiff's walk shorter than a different parking space.

Plaintiff does not dispute that such an offer was made. Rather, he asserts in his response brief, without citation to any evidence, that "no bus stopped really near Humana (no regular city bus runs down Main Street; 5th and Main is probably the closest any buses get) and getting off the bus several blocks from his building was little different than parking at a similar distance in any event." Plaintiff appears to now recognize that this assertion is simply false. Following Defendant's presentation of affidavit evidence that a bus stops directly in front of Plaintiff's former office, Plaintiff filed a motion to amend his response brief and stated, "Plaintiff did not testify that no regular city busses run down Main Street; this statement [in the response brief] was a result of the Plaintiff's attorney's incorrect information about city bus routes." Recognizing that the bus would drop him off directly in front of his office, Plaintiff offers no other evidence or rationale for finding that Defendant's provided accommodation was unreasonable or insufficient to meet his needs.[4] Therefore, Plaintiff's claim cannot proceed.

**IV.**

Plaintiff's second claim is that he was fired solely because of his alleged disability.

---

[4] Although Plaintiff cited no evidence to show that riding the bus was unreasonable, the Court reviewed his deposition in an attempt to understand why he refused this accommodation that could eliminate his walk to the office. Plaintiff stated that he believed it would be too difficult for him to step on to the bus. However, Plaintiff admits that he never tried to use the bus and that the buses are equipped for handicap individuals. Thus, even had Plaintiff cited to this as evidence of why the bus option was unreasonable, his statements are speculative and not sufficient to support his claim.

Because Plaintiff offers no direct evidence indicating he was terminated because of his alleged disability, his case is subject to the burden shifting analysis set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and refined in *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981). *See Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1105 (6th Cir. 2008). Plaintiff bears the initial burden of putting forth evidence to establish a prima facie case. If that burden is met, the burden shifts to Defendant to show a legitimate, non-discriminatory basis for the termination. If Defendant does so, the burden shifts back to Plaintiff to establish that the stated basis for his termination was merely a pretext for disability discrimination. *Id.*

> To establish a prima facie claim for disability discrimination, Plaintiff must show that:
>
> (1) he . . . is disabled; (2) [he was] otherwise qualified for the position, with or without reasonable accommodation; (3) [he] suffered an adverse employment decision; (4) the employer knew or had reason to know of the plaintiff's disability; and (5) the position remained open while the employer sought other applicants or the disabled individual was replaced.

*Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 703 (6th Cir. 2008). For the reasons stated in Section III A, Plaintiff has not shown that he is disabled under the ADA. Therefore, Plaintiff has not presented evidence of a prima facie claim and his case should be dismissed.

Even if Plaintiff could show that he is disabled, Defendant is still entitled to summary judgment. Defendant has offered the legitimate, non-discriminatory reason of absenteeism for its decision to terminate Plaintiff. It kept a detailed record of Plaintiff's absences (13 absences or significant episodes of tardiness), warned Plaintiff on multiple occasions of the need for proper attendance and the consequences of failing to comply, and terminated him in compliance with its absenteeism policies. Thus, Defendant has met its burden of stating a legitimate, non-

discriminatory reason for the termination. In response, Plaintiff offers no argument that this stated reason was merely a pretext for disability discrimination. Indeed, Plaintiff argues that he should not have to show pretext because Defendant failed to accommodate his request for a closer parking space. While that may be true for Plaintiff's reasonable accommodation claim, he must present evidence of pretext for his discrimination claim based on his termination. Because he has failed to do so, Plaintiff's claims fail as a matter of law.

The Court will enter an Order consistent with this Memorandum Opinion.

cc: Counsel of Record